UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Danielle Sivels, | Civil No. 23-894 (DWF/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Ramsey County, Marquet Johnson, Bob Fletcher, Sara Newman, Ramsey County Sheriff's Office, Inmate Services Corporation, and Randy Cagle, Jr., | |
| Defendants. | |

_____

Adam Joseph Smith, Esq., Anna Tierney Garau, Esq., Nabihah Maqbool, Esq., and Sarah C. Grady, Esq., Kaplan & Grady; Megan M. Curtis, Esq., Megan Curtis Law PLLC; Paul Applebaum, Esq., Applebaum Law Firm, counsel for Plaintiff.

Darren B. Schwiebert, Esq., Mark J. Briol, Esq., and Scott A. Benson, Esq., Briol & Benson PLLC, counsel for Defendant Ramsey County.

_____

INTRODUCTION

This matter is before the Court on Defendant Ramsey County's motion to dismiss. (Doc. No. 82.) Plaintiff Danielle Sivels opposes the motion. (Doc. No. 94.) For the reasons set forth below, the Court grants in part and denies in part the motion.

BACKGROUND

For more than a decade, Defendant Ramsey County contracted with Defendant Inmate Services Corporation ("ISC") to provide detainee transport. (Doc. No. 81 ("Am. Compl.") ¶ 31.) During this time, ISC and its CEO, Defendant Randy Cagle, have been

the subject of dozens of civil rights lawsuits, involving "allegations of excessive force, deprivation of medical care, and sexual assault and abuse." (*Id.* ¶ 34.) In 2016 and 2017, the media reported on a pattern of prisoner abuse by ISC employees. (*Id.* ¶ 36.)

In 2018, Ramsey County renewed its contract with ISC. (*Id.* ¶ 40.) Sivels alleges that Ramsey County was "on notice that Defendants ISC and Cagle had been the subjects of a host of civil-rights lawsuits" involving physical and sexual abuse. (*Id.* ¶ 69.) She further alleges that Ramsey County knew that ISC was not in compliance with Minnesota laws, requiring protective agents to be licensed and requiring "same-sex custodial escorts when transporting female prisoners in vehicles lacking audiovisual recording equipment." (*Id.* ¶ 68.) Moreover, Ramsey County policy required contracts for government services to be awarded to the "lowest responsive and responsible bidder." (*Id.* ¶ 71 (emphasis omitted).) Sivels alleges that Ramsey County entered into a contract with ISC merely because it was the lowest bidder without considering safety. (*Id.*)

In addition, Sivels alleges that in September 2016, a Ramsey County detainee was sexually assaulted by a different prisoner-transport contractor, U.S. Corrections. (*Id.* ¶ 61.) Thus, Sivels alleges, Ramsey County had "actual notice of failures in their sexual-assault prevention programs and in their policies concerning the selection, retention, monitoring, training, and disciplining of contractors and employees." (*Id.* ¶ 62.) Sivels asserts that Ramsey County did not make necessary changes to ensure that the same misconduct would not occur again. (*Id.* ¶¶ 60-61.)

In 2019, an ISC employee, Defendant Marquet Johnson, transported Sivels from Texas to Minnesota. (*Id.* ¶¶ 15-16.) During the trip, Johnson sexual assaulted Sivels,

2

forcing her to perform oral sex on him. (*Id.* ¶ 21.) Later in the trip, Johnson brutally raped Sivels in the bathroom of a rest stop. (*Id.* ¶¶ 26-27.) When Sivels arrived in Minnesota, Johnson continued to victimize her by sending her inappropriate and sexual texts and emails to her prison-issued tablet. (*Id.* ¶ 28.)

In 2023, Johnson was arrested on federal civil-rights charges. (*Id.* ¶ 29.) At least fifteen women, including Sivels, were sexual assaulted by Johnson while he was employed by ISC. (*Id.*) Johnson has since pled guilty to one count of willful deprivation of civil rights. (*Id.* ¶ 30.)

Sivels now brings this action against Defendants Bob Fletcher, Ramsey County, Ramsey County Sheriff's Office, ISC, Randy Cagle, Marquet Johnson, and Sara Newman. Relevant to this motion, Sivels brings three claims against Ramsey County: (1) *Monell* liability; (2) respondeat superior; and (3) negligent supervision. Ramsey County moves to dismiss these claims and the claim against the Ramsey County Sheriff's Office.

## DISCUSSION

### I.      Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City*

*of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.    Claim Against Ramsey County Sheriff's Office

As an initial matter, Sivels brings a *Monell* claim against the Ramsey County Sheriff's Office. Ramsey County argues that Minnesota County Sheriff's Offices cannot be sued. *See De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, at *1 (8th Cir. 2021). Sivels agrees. (Doc. No. 94 at 8.) Thus, the Court dismisses the claim and terminates Ramsey County Sheriff's Office as a party in this case.

### III.  Claims Against Ramsey County

Sivels brings three claims against Ramsey County:  (1) *Monell* liability; (2) respondeat superior; and (3) negligent supervision.  Ramsey County moves to dismiss each claim.

#### A.  *Monell* Liability

A municipality may be held liable under § 1983 if it, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, (1978).  Municipal liability exists "only where the municipality itself causes the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

"[L]iability for a constitutional violation attaches only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee."  *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840 (D. Minn. 2021).  Sivels sets out two theories of liability under *Monell*.  First, she argues that Ramsey County's decision to contract with ISC despite ISC's history of misconduct was an official policy or unofficial custom made with deliberate indifference.  Second, she asserts that Ramsey County was deliberately indifferent towards training and supervising transportation contractors.

5

### 1. Official Municipal Policy

Sivels argues that Ramsey County's decision to contract with ISC was an official policy. An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). An official policy is "often but not always committed to writing" and is "intended to, and do[es], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

In her Amended Complaint, Sivels states that Ramsey County has a policy to award contracts for government services to the "lowest responsive and responsible bidder." (Am. Compl. ¶ 71 (emphasis omitted).) Sivels argues that ISC was not a responsible bidder given its history of misconduct and Ramsey County awarded ISC the contract merely because it was the lowest bidder. Based on these allegations, it appears that Sivels is arguing that Sheriff Fletcher violated Ramsey County policy, not that he created a new official policy. Nor is it clear to the Court that the Sheriff had official policymaking authority with respect to the selection of contractors, and Sivels has not "cited any law bestowing policymaking authority on Sheriff [Fletcher]." *Berry v. Hennepin Cnty.*, No. 20-cv-2189, 2021 WL 4427215, at *4 (D. Minn. Sept. 27, 2021). Sivels's conclusory assertions in the Amended Complaint and her brief are not enough to plausibly establish that Sheriff Fletcher created a new official policy or that he had final policymaking authority regarding the selection of a prison-transport contractor.

### 2. Unofficial Custom

Sivels also alleges an unofficial custom. A custom is a "practice [that] is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "The Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard," however, "it has held that isolated incidents do not suffice." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citing cases). To establish *Monell* liability based on a continuing, widespread pattern of unconstitutional misconduct, a party must also show "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct" and that "the custom was a moving force behind the constitutional violation." *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 941 (D. Minn. 2021) (citation omitted).

Sivels alleges two instances of sexual assault of a detainee by a Ramsey County transportation contractor—one incident in 2016 and then her incident in 2019. While Ramsey County argues that this is not enough, Sivels is not required plead the full scope of the custom at this time. "Even if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the 'complaint must allege facts which would support the existence of an unconstitutional policy or custom.'" *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (internal quotations and citation). While at summary judgment, these two incidents may

not be enough, at this stage, the cited incidents of sexual assault "support[] the existence of an unconstitutional policy or custom." *Id.*

Sivels must also establish notice. Sivels alleges that Ramsey County had notice of the 2016 sexual assault by a separate transportation contractor. (Am. Compl. ¶ 61.) Moreover, in preparation for hiring a new prison-transport contractor in 2018, Ramsey County discussed how to "build [an inquiry into sexual assault allegations] into [its] solicitation" process, a further indication that Ramsey County was aware that sexual abuse by transport contractors was an issue. (*Id.* ¶ 63.) And lastly, Sivels argues that Ramsey County knew that ISC employees had a history of misconduct, specifically related to sexual abuse. The lawsuits were widely publicized by news outlets across the country and the *New York Times* and the *Marshall Project* conducted and published an investigation regarding ISC's malfeasance between 2016 and 2017. Whether this is enough to establish Ramsey County's notice of ISC's misconduct is a close call at best. But at this stage, the totality of the allegations plausibly show that Ramsey County had notice of issues of sexual abuse by their transport contractors.

Despite this knowledge, Sivels alleges that Ramsey County chose not to take action and was therefore deliberately indifferent to the misconduct. For example, Ramsey County did not examine the background of the transportation contractors, ensure compliance with state laws designed to protect detainees, institute its own safeguards to further prevent abuse, or otherwise monitor their contractors. This is enough to plausibly allege that Ramsey County was deliberately indifferent. The claim therefore survives Ramsey County's motion to dismiss.

### 3. Failure to Train or Supervise

Sivels also alleges that Ramsey County failed to adequately train or supervise its transportation contractors. "In order to recover for a failure to train or supervise . . . a plaintiff must establish four elements: (1) the supervisor was on notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor was deliberately indifferent to or tacitly authorized the pattern of unconstitutional acts; (3) the supervisor failed to take sufficient remedial action to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury." *Cole v. Does*, 571 F. Supp. 3d 1033, 1044 (D. Minn. 2021) (internal quotations and citations omitted)

Sivels alleges that Ramsey County failed to train and supervise its transportation contractors. Sivels alleges more than general statistics about sexual misconduct. Specifically, she alleges that, in 2016, an employee of a Ramsey County prison-transport contractor, U.S. Corrections, sexually abused a detainee while transporting the detainee to Ramsey County. Sivels further alleges that Ramsey County had not ensured that the company was in compliance with statutorily mandated precautions, such as a Minnesota law requiring the use of same-gender guards, Minn. Stat. § 631.412. (Am. Compl. ¶¶ 60-61.) Sivels thus alleges that Ramsey County was aware of unconstitutional acts committed by a transportation contractor and was on notice that its failure to ensure compliance with the law or otherwise monitor the contractor created a heightened risk of sexual assault.

9

As Ramsey County notes, the Eighth Circuit has held that there is not a "patently obvious need for the city to specifically train officers not to rape young women." *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010). Here, however, Sivels is asserting more than just a failure to train officers not to rape detainees. Sivels alleges that Ramsey County failed to take sufficient remedial action after the 2016 sexual assault and instead continued to allow its transportation contractors to violate laws intended to protect detainees from abuse, hired contractors without regard to their background or history of misconduct, did not conduct proper monitoring, and failed to institute safeguards to prevent future misconduct. For example, Ramsey County did not ensure compliance with Minn. Stat. § 631.412. When Sivels was sexually abused by Johnson, Sivels alleges that ISC was not in compliance with that law. Nor is it clear that Ramsey County did any meaningful monitoring of its transportation contractors, including looking into the background of the companies.

Further, ISC did not comply with Minn. Stat. § 326.3381, which requires protective agents to be licensed. While it is unclear whether Ramsey County knew about the licensing failure, at a minimum, Sivels plausibly alleges that Ramsey County was on notice as early as 2016 that its transportation contractors were not in compliance with laws intended to protect detainees from abuse. While Ramsey County argues that a violation of state law does not by itself state a claim under § 1983, here Sivels has alleged that "the county knew that wrongful acts similar to those alleged in this case had previously occurred and, deliberately or indifferently, took no remedial action, although it was in the county's power to prevent the commission of such wrongful acts." *Harden ex*

*rel. Est. of Travis v. St. Louis Cnty.*, No. 04-cv-602, 2005 WL 1661505, at * 3 (E.D. Mo. July 5, 2005). The Court therefore denies Ramsey County's motion to dismiss this claim.

### B. Respondeat Superior

Sivels also brings a claim of respondeat superior against Ramsey County. Under Minnesota law, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02. The terms "employee, officer, or agent" do not include independent contractors. § 466.01, subd. 6. "Minnesota courts consider a number of factors to distinguish an employee from an independent contractor, including '(1) [t]he right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.'" *Lopez v. Minn. Vikings Football Stadium, LLC*, No. 17-cv-1179, 2018 WL 626529, at *4 (D. Minn. Jan. 30, 2018) (quoting *Guhlke v. Roberts Truck Lines*, 128 N.W.2d 324, 326 (Minn. 1964)).

In Sivels's Amended Complaint, she alleges numerous times that ISC was "a Ramsey County contractor," and Defendant Johnson "was an employee and agent of Defendant ISC and a contractor of Defendant Ramsey County." (Am. Compl. ¶¶ 11-12, 31, 59, 87.) In addition, Sivels acknowledges that ISC and Ramsey County entered into a contract. That contract suggests that ISC and its employees were all independent contractors of Ramsey County. (Doc. No. 84-1 at 4.) The contract stated that "[t]he Contractor is and shall remain an independent contractor throughout the term of this

11

Agreement . . . ."[1] (*Id.*) And while the Amended Complaint does allege at various points that Defendant Johnson was "an agent" of Ramsey County, the Amended Complaint does not allege facts that demonstrate Ramsey County's control over ISC that would indicate an employee or agent relationship. *See Lopez*, 2018 WL 626529, at *4 (dismissing the respondeat superior claim because the contract indicated that the party was an independent contractor and "[t]he Amended Complaint fail[ed] to allege that MSFA retained any type of control over Hodynsky or the Minneapolis police officers").

In addition, Sivels's reliance on *Sterry v. Minn. Dep't of Corr.* is unavailing, as the case did not discuss an employer's liability for the actions of independent contractors. 8 N.W.3d 224 (Minn. 2024). The case did not discuss § 466.01, subd. 6 or even mention the words "independent contractor." Because Sivels's conclusion that Johnson was an agent or employee of Ramsey County is not supported by sufficient factual allegations, the Court grant's Ramsey County's motion to dismiss this claim.

C.   **Negligent Supervision**

Lastly, Sivels brings a claim of negligent supervision under Minnesota law. Sivels asserts that the sexual abuse by Johnson was "a foreseeable consequence of" Defendants Ramsey County, Fletcher, and Newman's "failure to exercise reasonable care." (Am. Compl. ¶ 97.) Specifically, Sivels asserts that these Defendants knew or should have

---

[1]   Sivels argues that the Court should not consider the contract. Even if the Court had not considered the contract, the Court's decision would remain the same given Sivels's sparce allegations regarding the nature of ISC's relationship with Ramsey County and her repeated acknowledgment that ISC was a contractor.

12

known that ISC was not in compliance with Minnesota laws intended to protect detainees from abuse and as a direct result of their failure to supervise, Sivels was harmed. (*Id.* ¶¶ 98-100.)

As noted above, a municipality is liable for the torts of its "officers, employees and agents acting within the scope of their employment." Minn. Stat. § 466.02. But Minnesota liability does not extend to "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." § 466.03, subd. 6. "[D]ecisions involving supervision and retention of employees are discretionary acts entitled to statutory immunity." *Lopez*, 2018 WL 626529, at *2 (quoting *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 320 (Minn. Ct. App. 1997)). The Court concludes that Ramsey County is entitled to statutory immunity "because its hiring, retention, and supervision decisions are discretionary acts." *Id.*

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Ramsey County's motion to dismiss (Doc. No. [82]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Court **GRANTS** Ramsey County's motion to dismiss Defendant Ramsey County Sheriff's Office as a party to this case.

    b. The Court **GRANTS** Ramsey County's motion to dismiss Sivels's *Monell* liability claim as it relates to an official policy.

  c. The Court **DENIES** Ramsey County's motion to dismiss Sivels's *Monell* liability claim as it relates to an unofficial custom or failure to train or supervise.

  d. The Court **GRANTS** Ramsey's County's motion to dismiss Sivels's respondeat superior claim.

  e. The Court **GRANTS** Ramsey's County's motion to dismiss Sivels's negligent supervision claim.

 2. Sivels's *Monell* claim related to an official policy and claims of respondeat superior and negligent supervision are **DISMISSED WITH PREJUDICE.**

 3. The Ramsey County Sheriff's Office is **TERMINATED** as a party in this case.

Dated:  August 14, 2024      s/Donovan W. Frank
                DONOVAN W. FRANK
                United States District Judge